IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-54

 No. COA21-127

 Filed 1 February 2022

 Franklin County, 20 CVS 630

 IN THE MATTER OF: PATRICIA BURNETTE CHASTAIN

 Appeal by Respondent from Order of Removal entered 16 October 2020 by

 Judge Thomas H. Lock in Franklin County Superior Court. Heard in the Court of

 Appeals 2 November 2021.

 Zaytoun Ballew & Taylor, PLLC, by Matthew D. Ballew, Clare F. Kurdys, and
 Robert E. Zaytoun, for Respondent-Appellant.

 Davis, Sturges & Tomlinson, PLLC, by Conrad B. Sturges, III, for the
 Petitioner-Appellee.

 DILLON, Judge.

¶1 Respondent Patricia Burnette Chastain appeals from an order entered by

 Judge Thomas H. Lock removing her as the Clerk of Superior Court for Franklin

 County. Though there was evidence in the record that could support his decision,

 Judge Lock erroneously based his decision, in part, on acts by Ms. Chastain not

 alleged in the charging affidavit or which do not rise to the level of misconduct.

 Accordingly, we vacate Judge Lock’s Order and remand for his reconsideration in
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 accordance with this opinion.

 I. Background

¶2 In 2014, Ms. Chastain was elected by the people of Franklin County to serve

 as their Clerk of Superior Court. She was reelected to a second term in 2018.

¶3 In July 2020, Franklin County attorney Jeffrey Thompson commenced this

 proceeding seeking the removal of Ms. Chastain as Franklin County’s Clerk,

 pursuant to N.C. Gen. Stat. § 7A-105 (2020), by filing an affidavit alleging that she

 had committed various acts of willful misconduct.

¶4 In October 2020, after a hearing on the matter, Judge Lock entered his Order

 permanently removing Ms. Chastain as the Franklin County Clerk of Court based on

 findings that Ms. Chastain had engaged in various acts of misconduct, some of which

 had not been alleged in Mr. Thompson’s affidavit. Judge Lock ultimately based his

 decision on “[t]he nature and type of [her] misconduct in office, the frequency of its

 occurrence, the impact which knowledge of her misconduct would likely have on the

 prevailing attitudes of the community, and [her] reckless disregard for the high

 standards of the Office of Clerk of Superior Court[.]”

¶5 Ms. Chastain timely appealed Judge Lock’s Order.

 II. Analysis

¶6 A proceeding regarding the removal of an elected official “is neither a civil nor

 a criminal action.” In re Nowell, 293 N.C. 235, 241, 237 S.E.2d 246, 250 (1977).
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 Rather, it “is merely an inquiry into the conduct of one exercising [official] power to

 determine whether [s]he is unfit to hold [her office]. Its aim is not to punish the

 individual but to maintain the honor and dignity of the [office] and the proper

 administration of justice.” Id. at 241, 237 S.E.2d at 250. “Albeit serious,” removal

 from office is “not to be regarded as punishment but as the legal consequence[ ]

 attached to adjudged [ ] misconduct or unfitness.” Id. at 241, 237 S.E.2d at 251.

¶7 Here, we must determine whether the matter was properly before Judge Lock

 and whether he followed the law correctly in removing Ms. Chastain.

¶8 This matter was brought forth pursuant to Section 7A-105 of our General

 Statutes, enacted by our General Assembly to provide the procedural mechanism for

 the removal of the Clerk of Superior Court in a county. Our General Assembly,

 though, only has the authority to prescribe the procedure and the conditions under

 which an elected official may be removed, where such is not otherwise provided for by

 our Constitution:

 “[I]t is firmly established that our State Constitution is not
 a grant of power. All power which is not expressly limited
 by the people in our State Constitution remains with the
 people, and an act of the people through their
 representatives in the legislature is valid unless prohibited
 by that Constitution [or by the federal constitution].”

 Baker v. Martin, 330 N.C. 331, 334-37, 410 S.E.2d 887, 888-91 (1991) (considering the

 authority of our General Assembly to enact legislation requiring any individual
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 seeking appointment to serve out an unexpired term of an elected judge must be a

 member of the same political party as the judge being replaced).

¶9 We, therefore, must first determine the limitations placed on our General

 Assembly by our Constitution in prescribing a mechanism for the removal of a

 county’s duly elected Clerk.

 A. Article IV

¶ 10 The Clerk of Superior Court in a county is a constitutional officer, whose office

 is established by Article IV, section 9(3) of our Constitution. Our Constitution

 provides two different avenues by which an elected Clerk may be removed. Pertinent

 to this matter and as more fully examined below, one constitutional avenue allows

 for a Clerk to be removed from her current term of office for mere “misconduct” in

 office, while the other avenue allows for a Clerk to be permanently disqualified from

 holding office for “corruption or malpractice in [ ] office.”

¶ 11 The first constitutional avenue is found in Article IV of our Constitution.

 Article IV establishes our judicial branch, including the office of Clerk in each county.

 Section 17 empowers the “senior regular resident Superior Court Judge serving the

 county” to remove the county’s Clerk for “misconduct or [for] mental or physical

 incapacity[.]” N.C. Const. art. IV, § 17(4) (emphasis added).

¶ 12 Significantly, Article IV confers on a single individual, the authority to remove

 the elected Clerk in a county; namely, the senior regular resident Superior Court
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 Judge in that same county. Accordingly, no other judge may be conferred with

 jurisdiction over the subject matter of removing a Clerk for misconduct under Article

 IV. Indeed, consider that Article IV confers on our Senate only the authority to

 conduct an impeachment trial for the removal of our Governor. N.C. Const. art. IV,

 § 4. And it is unquestioned that our General Assembly may not confer on any other

 body or judge the authority to conduct such impeachment trial.

¶ 13 Accordingly, since Judge Lock is not the senior regular resident Superior Court

 Judge in Franklin County, he lacked any authority to remove Ms. Chastain for mere

 “misconduct” under Article IV. The only individual currently conferred with this

 authority under Article IV is Judge John Dunlow, Franklin County’s current senior

 regular resident Superior Court Judge.

¶ 14 It may be that Judge Dunlow has an ethical conflict under our Code of Judicial

 Conduct to consider Ms. Chastain’s removal for misconduct (or incapacity) under

 Article IV. Indeed, after a hearing on Ms. Chastain’s motion to have Judge Dunlow

 disqualified from hearing the matter, another judge ordered that Judge Dunlow was

 ethically required to recuse himself based on a letter Judge Dunlow had written

 which contained “conclusory language regarding” one of the acts of misconduct that

 Ms. Chastain was alleged to have committed.

¶ 15 However, since our Constitution does not confer subject-matter jurisdiction on

 anyone else to consider an elected Clerk’s removal for misconduct under Article IV,
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 the Rule of Necessity applies. Under this Rule, a judge may hear a matter,

 notwithstanding that his participation may violate a judicial ethical canon, where his

 disqualification “would result in a denial of a litigant’s constitutional right to have a

 question properly presented to such a court.” Lake v. State Health Plan for Teachers

 & State Emps., 376 N.C. 661, 664, 852 S.E.2d 888, 890 (2021).

¶ 16 Our Supreme Court has cited to the Rule of Necessity in holding that a

 Governor may decide a clemency request though he had previously been involved in

 the prosecution of the criminal making the request when previously serving as

 Attorney General. Bacon v. Lee, 353 N.C. 696, 717-18, 549 S.E.2d 840, 854-55 (2001)

 (noting that the Governor is the only individual constitutionally empowered to hear

 clemency requests). Our Business Court also relied on the Rule of Necessity in

 considering the propriety of members of a county board of commissioners to sit in

 judgment of the removal of one of its members, notwithstanding ethical concerns:

 The court cautions that it also has not held that any
 removal from office would be foreclosed even if bias could
 be proven in any further proceeding. The court is aware of
 no authority by which the Board could delegate its decision
 making by appointing a special committee as might a
 private corporation. As such, other than a recall election, it
 is the only body having authority to consider removal.
 There are cases where courts have upheld even biased
 quasi-judicial decisions when they were made by the only
 governmental body that had the power to make the finding.
 They did so employing a doctrine referred to as the “rule of
 necessity.”
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 Berger v. New Hanover County Bd. of Comm’rs, 2013 NCBC 45, ¶74 (2013) (emphasis

 in original).

¶ 17 The fact that it was Ms. Chastain who sought Judge Dunlow’s recusal does not

 change our analysis concerning Judge Lock’s lack of authority to consider her removal

 under Article IV. As our Supreme Court has stated, “we have never found that a

 party can waive the fundamental requirement that a court have subject matter

 jurisdiction.” In re T.R.P., 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006).

 B. Article VI

¶ 18 Having concluded that the Article IV avenue could not serve as the basis for

 Judge Lock’s decision to remove Ms. Chastain from office, we must consider the other

 constitutional avenue by which a sitting Clerk may be removed, found in Article VI.

 Article VI prescribes that certain classes of individuals are disqualified from holding

 any office. Relevant to this present case, a Clerk may be removed from her current

 term as a consequence of being disqualified from holding any office under Article VI

 where she is “adjudged guilty of corruption or malpractice in any office[.]” N.C.

 Const. art. VI, § 8 (emphasis added).1

 1 Other classes of individuals which our Constitution declares to be disqualified from

 holding office include those “adjudged guilty of [a] felony . . . and who has not been restored
 to the rights of citizenship[,]” any person “who has been removed by impeachment[,]” any
 person “not qualified to vote in an election for [the] office[,]” and “any person who shall deny
 the being of Almighty God.” N.C. Const. art. VI, § 8.
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

¶ 19 Clearly, this Article VI standard is higher than the mere “misconduct”

 standard found in Article IV. But unlike Article IV, Article VI does not specify any

 procedure or confer authority on any particular judge or body to make disqualification

 determinations based on acts of corruption or malpractice. Our General Assembly

 may, therefore, prescribe a procedure. Indeed, well over a century ago, our Supreme

 Court recognized the inability of a court to declare an individual disqualified from

 holding office without legislative authorization to do so:

 If the courts were authorized by legislative enactment to
 pronounce in their judgments upon a conviction of [a
 felony] the disqualification of the defendant for office[,]
 then the judgments and punishments would be different
 and there would be much force in the argument, in the
 absence of any other legislation on the subject. But the
 courts have no such power. They can only render such
 judgments as the law annexes to the crimes, and empowers
 them to pronounce.

 State v. Jones, 82 N.C. 685, 686 (1880). More recently, in a case involving the removal

 of an elected judge, our Supreme Court reiterated our General Assembly’s authority

 to prescribe a procedure to disqualify an individual under Article VI:

 We conclude that the [use] of the term “adjudged
 guilty” [in Article VI] permits the General Assembly
 to prescribe proceedings in addition to criminal trials
 in which an adjudication of guilt will result in
 disqualification from office. Pursuant to that
 authorization, the legislature enacted G.S. 7A-376,
 barring a judge from future judicial office when he
 has been removed by this Court for wilful
 misconduct in office.
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 In re Peoples, 296 N.C. 109, 166, 250 S.E.2d 890, 923 (1978) (emphasis added).

¶ 20 Our General Assembly has enacted Section 7A-105, under which this present

 matter was brought. We, therefore, turn to its provisions in our evaluation of Judge

 Lock’s Order.

¶ 21 Section 7A-105 states that a Clerk may be (1) “suspended or removed from

 office” (2) “for willful misconduct or mental or physical incapacity” and (3) that the

 proceeding “shall be initiated by the filing of a sworn affidavit” and heard “by the

 senior regular resident superior court judge serving the county of the clerk’s

 residence.” N.C. Gen. Stat. § 7A-105.

¶ 22 As we construe Section 7A-105, we are mindful that, while our General

 Assembly may prescribe a procedure for the disqualification of an elected Clerk under

 Article VI, our General Assembly may not add conditions which would render a Clerk

 disqualified from holding office to those already provided for in our Constitution.

 Indeed, our Constitution states that any “qualified voter in North Carolina who is 21

 years of age” is eligible to be elected to any office, “except as in this Constitution

 disqualified.” N.C. Const. art. VI, § 6. And our Supreme Court has instructed that

 “N.C. Const. art. VI, § 6 does expressly limit disqualifications to office for those who

 are elected by the people to those disqualifications set out in the Constitution.” Baker,

 330 N.C. at 339, 410 S.E.2d at 892 (emphasis added) (stating our General Assembly
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 may add conditions of disqualifications for those seeking appointment to an office).

¶ 23 Also, our General Assembly lacks authority to allow for the imposition of a

 sanction against a Clerk which is not already provided for under our Constitution.

 See Peoples, 296 N.C. at 161, 250 S.E.2d at 920 (noting “the scope of removal

 proceedings [under the statute] cannot be broader than the constitutional [provision]

 which authorized the General Assembly to set up a procedure for removal and

 censure of judges”).

¶ 24 Here, Judge Lock ordered Ms. Chastain “permanently removed” as Clerk. This

 sanction is certainly within the sanction allowed for in Article VI, as it is akin to being

 “disqualified.” Further, we hold that the sanction in Section 7A-105 that a Clerk may

 be “removed” includes that a Clerk may be “permanently removed.”

¶ 25 We now address whether a judge has authority to permanently remove

 someone from only the office of Franklin County Clerk, as Judge Lock did here, when

 acting pursuant to authority granted by Article VI, where Article VI prescribes the

 sanction of disqualification from holding any office. That is, can our General

 Assembly prescribe a procedure whereby a judge can order a “lesser-included”

 sanction to that provided for in our Constitution? Certainly, the disqualification from

 holding a particular office is a lesser-included sanction than disqualification from

 holding any office.

¶ 26 We hold that any constitutional authority to sanction an elected Clerk in a
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 particular way includes the authority to issue a lesser-included sanction. In so

 holding, we are persuaded by the fact that though Section 17 of Article IV authorizes

 our General Assembly to establish a procedure for the censure or removal of judges,

 our General Assembly has established a procedure whereby our Supreme Court may

 also “suspend” and “public[ly] reprimand” a judge. N.C. Gen. Stat. § 7A-376. And,

 our Supreme Court has imposed these lesser sanctions on offending judges pursuant

 to this statute. See, e.g., In re Hartsfield, 365 N.C. 418, 431-32, 722 S.E.2d 496, 505

 (imposing a 75-day suspension without pay); In re Clontz, 376 N.C. 128, 143, 852

 S.E.2d 614, 624 (2020) (issuing a public reprimand).

¶ 27 We next address whether Judge Lock had authority to sanction Ms. Chastain

 under Article VI for her “misconduct in office[.]” The procedure in Section 7A-105

 allows for a Clerk to be removed for “willful misconduct.” While Article IV allows for

 the removal of a Clerk for “misconduct,” which certainly includes “willful

 misconduct,” only Judge Dunlow has authority under that Article to remove Ms.

 Chastain for “misconduct.” In any event, the relevant portion of Article VI does not

 expressly provide for a Clerk’s removal for “misconduct” or “willful misconduct,” but

 rather for “corruption or malpractice in any office[.]”

¶ 28 Our Supreme Court, though, has held that, in a case involving egregious

 conduct, an “adjudication of [a judge’s] ‘willful misconduct in office’ . . . is equivalent

 to an adjudication of guilt of ‘malpractice in any office’ as used in N.C. Const., art. VI,
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 § 8[,]” a finding which would disqualify the judge from holding any office in the future.

 Peoples, 296 N.C. at 166, 250 S.E.2d at 923. It is unclear, however, if our Supreme

 Court intended to suggest in Peoples that every act of “willful misconduct” rises to the

 level of “corruption or malpractice” to warrant disqualification under Article VI.

¶ 29 We do hold that acts of misconduct which do not rise to the level of willful

 misconduct do not equate to “corruption or malpractice” under Article IV. In any

 event, we note that under our case law and the plain language of our Constitution,

 not all “misconduct” is deemed to be willful. We do note that our Supreme Court has

 stated that “persist[ent]” acts of “misconduct” may rise to the level of “wilful

 misconduct.” In re Martin, 302 N.C. 299, 316, 275 S.E.2d 412, 421 (1981).

¶ 30 Our Supreme Court has held in the context of a criminal statute that “willfully”

 means “something more than an intention to commit the offense. It implies

 committing the offense purposely and designedly in violation of law.” State v.

 Stephenson, 218 N.C. 258, 264, 10 S.E.2d 819, 823 (1940). In the same vein, in the

 context of a proceeding to discipline a judge, our Supreme Court

 ha[s] defined “wilful misconduct in office” as involving
 “more than an error of judgment or a mere lack of
 diligence.” We have also stated that “[w]hile the term
 would encompass conduct involving moral turpitude,
 dishonesty, or corruption, these elements need not
 necessarily be present.” As we observed in In re Martin,
 supra, “if a judge Knowingly and wilfully persists in
 indiscretions and misconduct which this Court has
 declared to be, or which under the circumstances he should
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 know to be, acts which constitute wilful misconduct in office
 and conduct prejudicial to the administration of justice
 which brings the judicial office into disrepute, he should be
 removed from office.”

 In re Martin, 302 N.C. at 316, 275 S.E.2d at 421 (internal citations omitted) (italics

 in original).

¶ 31 Neither party cites to any other case defining what constitutes “corruption or

 malpractice,” as used in Article VI. We construe the language to include at a

 minimum acts of willful misconduct which are egregious in nature, as those in

 Peoples. Further, we construe the language “willful misconduct” in Section 7A-105

 in the context of an Article VI hearing to include only those acts of willful misconduct

 which rise to the level of “corruption or malpractice” in office. Accordingly, Judge

 Lock lacked authority to rely on any acts of Ms. Chastain that did not rise to this level

 to support his sanction under Article VI.

 C. Due Process

¶ 32 We next consider the language in Section 7A-105 that the proceeding “shall be

 initiated by the filing of a sworn affidavit.” We note that this procedure was followed,

 as this proceeding was initiated by the filing of Mr. Thompson’s affidavit alleging

 various acts of misconduct by Ms. Chastain. However, Judge Lock made findings

 concerning acts that had not been alleged in Mr. Thompson’s affidavit and relied on

 those findings, in part, to support his sanction. Our Supreme Court, though, has held
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 that any procedure to remove an elected official must afford that official due process.

 See In re Spivey, 345 N.C. 404, 413-14, 480 S.E.2d 693, 698 (1997) (holding that our

 Constitution does not prohibit our General Assembly from enacting methods for

 removal “so long as [the officers’] whose removal from office is sought are accorded

 due process of law”); see also In re Nowell, 293 N.C. 235, 241-42, 237 S.E.2d 246, 251

 (1977) (holding that “fundamental fairness entitles [the officer] to a hearing which

 meets the basic requirements of due process”). We hold that Ms. Chastain has the

 due process (and statutory) right to notice of the acts for which her removal was being

 sought. We, therefore, conclude that Judge Lock’s reliance on these acts that were

 not alleged in Mr. Thompson’s affidavit violated Ms. Chastain’s due process rights.

¶ 33 We note the appellee’s argument that Ms. Chastain “opened the door” to the

 presentation of other acts. However, to the extent that she opened the door, Judge

 Lock could only consider those acts to assess Ms. Chastain’s credibility, as she had no

 notice that she would be subject to removal for those acts. (In the same way, a

 criminal defendant who opens the door to the admission of past criminal acts can only

 be punished in that trial for the acts for which he was indicted; the past criminal acts

 may only be used to show the likelihood that he committed the acts for which he was

 indicted.)

 D. Jurisdiction

¶ 34 Finally, we consider the language in Section 7A-105 that the matter be heard
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 by the “senior regular resident superior court judge serving the county of the clerk’s

 residence.” We hold, though, that Judge Lock’s involvement is not necessarily fatal.

 Unlike the provision in Article IV vesting jurisdiction in the senior resident judge to

 remove a Clerk for “misconduct”, we hold the statutory requirement found in Section

 7A-105 to be procedural in nature. Indeed, the statute speaks to the requirement as

 a matter of “procedure.” Id. Jurisdiction to consider a matter under Section 7A-105

 lies with our Superior Court division generally.

¶ 35 In this case, Judge Dunlow’s participation was adjudicated as being in

 violation of our Code of Judicial Conduct. And though our General Assembly has not

 expressly prescribed a procedure allowing another judge to substitute for the senior

 resident judge in a Section 7A-105 matter, our Supreme Court recognizes that the

 judiciary may prescribe a procedure, not inconsistent with our Constitution, to fill in

 procedural gaps left open by our General Assembly:

 Within the guidelines of our Constitution, the legislature
 is charged with the responsibility of providing the
 necessary procedures for the proper commencement of a
 matter before the courts. Occasionally, however, the
 prescribed procedures of a statutory scheme fail to embrace
 the unanticipated and extraordinary proceeding such as
 that disclosed by the record before us. In similar
 situations, it has been long held that courts have the
 inherent power to assume jurisdiction and issue necessary
 process in order to fulfill their assigned mission of
 administering justice efficiently and promptly. We believe
 that this is one of those extraordinary proceedings and that
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

 our rules of procedure should not be construed so literally
 as to frustrate the administration of justice.

 In re Investigation of Death of Eric Miller, 357 N.C. 316, 322, 584 S.E.2d 772, 778

 (2003). Accordingly, we hold that this matter was properly before Judge Lock.

 III. Conclusion

¶ 36 This matter was properly before Judge Lock to consider whether Ms. Chastain

 should be removed for “corruption or malpractice” in office under Article VI.

 However, it is not clear from his Order whether Judge Lock applied the correct

 standard. That is, it is unclear whether Judge Lock was removing Ms. Chastain for

 “misconduct” under Article IV, which he lacks the power to do, or whether he was

 removing Ms. Chastain because he thought her acts rose to the level of “corruption or

 malpractice in [her] office.” Further, Judge Lock erroneously based his sanction of

 Ms. Chastain, in part, on acts which were not contained in the charging affidavit, in

 violation of her due process rights. We, therefore, vacate Judge Lock’s Order and

 remand for further proceedings consistent with this opinion.

¶ 37 The subject of any rehearing before Judge Lock is limited to whether the acts

 alleged in the affidavit before him rose to the level of “corruption or malpractice” in

 office under Article VI of our Constitution. Any hearing to consider Ms. Chastain’s

 removal from her current term of office for misconduct under Article IV must be

 before the senior regular resident Superior Court Judge of Franklin County.
 IN RE: CHASTAIN

 2022-NCCOA-54

 Opinion of the Court

VACATED AND REMANDED.

Judges WOOD and GORE concur.